J-S08026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JUAN RAMON TIBURCIO | : | |
| | : | |
| Appellant | : | No. 1379 MDA 2022 |

Appeal from the PCRA Order Entered August 30, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004618-2015

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED: JULY 28, 2023**

Juan Ramon Tiburcio (Appellant) appeals from the order entered in the Berks County Court of Common Pleas denying his first petition for collateral relief filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Appellant seeks relief from the judgment of sentence of an aggregate term of 11 to 60 years' imprisonment, imposed following his jury conviction of, *inter alia*, two counts of delivery of heroin, and one count of possession with intent to deliver (PWID) heroin[2] following a two-month, undercover investigation.   On appeal, Appellant raises six claims of trial counsel's ineffectiveness.   For the reasons below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

[2] ***See*** 35 P.S. § 780-113(a)(30).

The facts underlying Appellant's convictions were summarized in a prior decision of this Court:

> [During the summer of 2015,] the Narcotics Enforcement Team of the Berks County District Attorney's Office ("Narcotics Team") was working undercover to purchase heroin from a suspect, Karla Romig.
>
> [Sergeant Todd Harris was in charge of the investigation. On June 29 and July 20, 2015, Detective Camilla Karns, working undercover with the help of a confidential informant (CI), made two separate purchases of heroin from Romig. On each occasion, Romig stated she was getting the drugs from "her guy." The team set up a third purchase for August 11th, at which time they arrested Romig for drug offenses.][3]
>
> [Romig] then consented to Sergeant [ ] Harris' use of her phone to contact her supplier, later identified as Appellant. Posing as Romig, Sergeant Harris texted Appellant. During the text conversation, Sergeant Harris asked Appellant for "three whole ones" which meant he was asking for three bundles of heroin. Through the text conversation between Sergeant Harris (posing as Romig) and Appellant, they arranged to have Appellant deliver the drugs to Romig's residence. Once Appellant arrived at the residence, he sent a text message to Romig stating that he was outside.
>
> At that same time, the surveillance units working with Sergeant Harris informed him that a Toyota Camry had pulled up at the residence. Appellant exited the passenger side of the Camry, operated by his brother Michael Tiburcio ("co-defendant"), and started to walk up onto the porch of Romig's residence. He was then taken into custody. The Narcotics Team recovered from Appellant's person $818.00 in U.S. currency, two cellular telephones, and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets.
>
> The Narcotics Team instructed the co-defendant to exit the Camry. A subsequent search of the co-defendant led to the recovery of a plastic sandwich bag containing 41 packets of crack

---

[3] **See** N.T. Jury Trial, 8/1/16 – 8/2/16, at 109-28, 204-05.

cocaine, $296.00 in U.S. currency, a chunk of bulk cocaine and one packet of powder cocaine. Following the administration of *Miranda*[4] warnings, the co-defendant directed the Narcotics Team to a small change drawer to the left of the steering wheel in the Camry containing 15 additional packets of heroin. The Narcotics Team also recovered the co-defendant's cellular phone from inside of the Camry. The co-defendant admitted to Detective George Taveras of the Berks County District Attorney's Office that he was "willing to cooperate with law enforcement," "he was doing this to get by," "times were tough," and that "this was a very small amount" and he can do "bigger things."

*Commonwealth v. Tiburcio*, 1589 MDA 2016 (unpub. memo. at 2-3) (Pa. Super. Aug. 22, 2017) (some paragraph breaks added).

Appellant was arrested and charged with two counts of delivery of heroin, one count of PWID, and three counts each of criminal conspiracy, criminal use of a communication facility, possession of drug paraphernalia, and possession of a controlled substance.[5] Kevin Feeney, Esquire was appointed as trial counsel. On October 9, 2015, the Commonwealth notified Appellant that it was consolidating his case with the charges against his brother. *See* Notice of Consolidation, 10/9/15.

A two-day jury trial commenced on August 1, 2016. At the conclusion of trial, the court granted Appellant's motion for judgment of acquittal on two of the three conspiracy charges. *See* N.T., Jury Trial, at 358-59. Thereafter,

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[5] *See* 18 Pa.C.S. §§ 903(a)(1), 7512(a); 35 P.S. § 780-113(a)(16), (32).

- 3 -

the jury returned a verdict of guilty on all of the remaining charges.[6] *See id.* at 449. On August 9, 2016, Appellant was sentenced to an aggregate term of 11 to 60 years' imprisonment.[7]

Appellant filed a timely direct appeal[8] raising three issues: (1) whether the trial court erred when it permitted the Commonwealth to present expert witness testimony when it did not disclose the expert to the defense before trial, and such testimony was unnecessary; (2) whether the evidence was sufficient to support his conviction of conspiracy; and (3) whether the sentence imposed was excessive. *See Tiburcio*, 1589 MDA 2016 (unpub. memo. at 4). A panel of this Court affirmed the judgment of sentence on August 22, 2017. *See id.*

More than 30 days later, on September 27, 2017, the trial court received a *pro se* letter from Appellant, stating that he asked Attorney Feeney to file a petition for allowance of appeal with the Pennsylvania Supreme Court, but that no petition had been filed. *See* Appellant's Letter to Trial Court, 9/27/17.

_____

[6] The jury also found co-defendant Michael Tiburcio guilty of two counts each of PWID, criminal conspiracy, and possession of controlled substances. *See* N.T., Jury Trial, at 450.

[7] The trial court imposed consecutive sentences of 33 months to 15 years' imprisonment on both counts of delivery of heroin, as well as the charges of PWID and criminal conspiracy. It imposed concurrent terms of 18 months to 7 years' imprisonment for each count of criminal use of a communication facility. The remaining charges merged for sentencing purposes. *See* N.T. Sentencing, 8/9/16, at 12-14.

[8] Attorney Feeney continued to represent Appellant on appeal.

Thereafter, on October 18, 2017, Appellant filed a *pro se* petition requesting leave to file a petition for allowance of appeal *nunc pro tunc*. **See** Appellant's Petition for Leave of the Court to Grant Nunc Pro Tunc to the Petitioner the Right to File a Petition for Allowance of Appeal to the Pa. Supreme Court, 10/18/17. Recognizing Appellant's petition to be a request for PCRA relief, the court entered an order on October 30, 2017, appointing Lara Hoffert, Esquire, to represent Appellant, and directing her to file an amended petition within 60 days. **See** Order, 10/30/17. Over the next year, Attorney Hoffert was granted seven extensions of time to file an amended petition.

On January 29, 2019, Attorney Hoffert filed an amended PCRA petition presenting two claims of prior counsel's ineffective assistance: (1) failing to file a requested petition for allowance of appeal, and (2) waiving Appellant's discretionary aspects of sentencing claim on direct appeal.[9] **See** Appellant's Amended Petition for Relief Under the Post Conviction Relief Act, 6/29/19, at 3 (unpaginated). Following a brief hearing on February 28, 2019, the PCRA court entered an order, upon agreement of the parties, granting Appellant the following relief: (1) the court reinstated Appellant's direct appeal rights *nunc pro tunc* limited to a challenge to the discretionary aspects of his sentence; and (2) thereafter, if necessary, the court reinstated Appellant's right to file a

---

[9] On direct appeal, this Court found Appellant's discretionary sentencing claim waived because Appellant failed to include the requisite Pa.R.A.P. 2119(f) statement of reasons relied upon for allowance of appeal in his brief, and the Commonwealth objected to the omission. **See Tiburcio**, 1589 MDA 2016 (unpub. memo. at 4 n.3).

petition for allowance of appeal *nunc pro tunc*, including issues raised in his prior direct appeal. **See** Order, 2/28/19. Appellant filed a timely *nunc pro tunc* direct appeal on March 25, 2019.

On March 10, 2020, a panel of this Court rejected Appellant's sentencing claims and affirmed his judgment of sentence. **See Commonwealth v. Tiburcio**, 505 MDA 2019 (unpub. memo. at 11) (Pa. Super. Mar. 10, 2020), *appeal denied*, 160 MAL 2020 (Pa. Nov. 3, 2020). Nevertheless, because the panel recognized that Appellant's guideline sentence form listed "the incorrect quantity of drugs, causing the [offense gravity score (OGS)] to be incorrect[,]" it remanded the case for correction of the guideline sentence form.[10] **See id.** at 10-11. The panel noted, however, that the trial court "applied the appropriate OGS" at sentencing and "the sentencing order accurately reflects the correct sentence imposed." **Id.** at 9-10. Thereafter, Appellant filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on November 30, 2020. **See** 160 MAL 2020.

On January 26, 2022, Appellant — now represented by privately-retained counsel Teri B. Himebaugh, Esquire — filed a timely PCRA petition, asserting six claims of trial counsel's (Attorney Feeney's) ineffective assistance. **See** Appellant's Motion for Post Conviction Relief, 1/26/22, at 5-41. The PCRA

_____

[10] The panel explained that the correction was necessary because "the Pennsylvania Commission on Sentencing uses the guideline sentence forms to monitor the application and compliance with the guidelines[.]" **See Tiburcio**, 505 MDA 2019 (unpub. memo. at 10 n.9).

court conducted a hearing on May 23, 2022, at which both Attorney Feeney and Appellant testified. At the conclusion of the hearing, the court directed the parties to filed post-hearing briefs, and both Appellant and the Commonwealth complied. Thereafter, on August 30, 2022, the PCRA court entered an order, accompanied by Findings of Fact and Conclusions of Law, denying PCRA relief. *See* Order, 8/30/22. This timely appeal follows.[11]

Appellant presents the following six claims for our review:

I.  Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution violated due to trial counsel's ineffective advice in relation to rejecting the plea offer?

II.  Were Appellant's constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution violated due to trial counsel's ineffective advice that Appellant not testify on his own behalf?

III.  Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, secs. 8 and 9 of the Pennsylvania Constitution violated due to trial counsel's ineffective failure to file a Pre-Trial Motion to Suppress, and object, during trial, to the Commonwealth's illegal vehicle search?

_____

[11] Appellant complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and listed the same six claims as raised in his petition. *See* Appellant's Statement of Matters Complained of on Appeal, 10/14/22, at 1-3 (unpaginated). On November 1, 2022, the PCRA court issued a statement in lieu of an opinion, in which it incorporated its reasons for denying relief as set forth in its August 30, 2022, Findings of Fact and Conclusions of Law. *See* Statement in Lieu of Opinion, 11/1/22, at 3.

IV.    Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution violated due to trial counsel's ineffectiveness in relation to the Commonwealth's 'expert' Det. Lep[o]race?

V.     Were Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution violated due to trial counsel's ineffectiveness in relation to the Commonwealth's Confidential Informant?

VI.    Were Appellant's constitutional right[s] to due process of law and a fair trial violated by the cumulative impact of trial counsel['s] ineffectiveness in violation of the Sixth Amendment?

Appellant's Brief at 3-4.

When considering a ruling denying PCRA relief,

[o]ur standard of review . . . is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error.  This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings.  [W]e review the court's legal conclusions *de novo*.

**Commonwealth v. Washington**, 269 A.3d 1255, 1262 (Pa. Super. 2022) (*en banc*) (citations & quotation marks omitted), *appeal denied*, 283 A.3d 1249 (Pa. 2022).  When the PCRA court grants a hearing on the petition, the court's "credibility findings are to be accorded great deference[,]" such that "where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court."  **Commonwealth v. Dennis**, 17 A.3d 297, 305 (Pa. 2011).

Each of Appellant's claims on appeal assert the ineffective assistance of trial counsel.  Therefore, our review is guided by the following:

> Counsel is presumed to have been effective. In order to overcome that presumption and prevail on a claim of ineffectiveness, Appellant must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that because of the act or omission in question, the outcome of the proceeding would have been different.

> Failure to satisfy any one of the three prongs of the test will result in failure of the entire claim.

***Commonwealth v. Bishop***, 266 A.3d 56, 62 (Pa. Super. 2021) (citations omitted). Furthermore, "[c]ounsel cannot be found ineffective for failing to raise a baseless or meritless claim." ***Commonwealth v. Epps***, 240 A.3d 640, 645 (Pa. Super. 2020).

In his first issue, Appellant contends Attorney Feeney provided ineffective assistance which led him to reject the Commonwealth's pretrial plea offer of 2 to 5 years' incarceration.[12] Appellant's Brief at 10. He maintains that the OGS on the plea sheet was incorrect because it was based on "50-100 grams of drugs being found when in fact, it was significantly less." *Id.* Appellant asserts that although he alerted his attorney that the OGS was incorrect, Attorney Feeney did not investigate or address Appellant's complaint. ***See id.*** Finally, Appellant argues that he was prejudiced by counsel's actions because he would have taken the plea if Attorney Feeney

---

[12] "Generally, counsel has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer." ***Commonwealth v. Marinez***, 777 A.2d 1121, 1124 (Pa. Super. 2001) (citation omitted).

had "communicated adequately with [him] and re-negotiated the plea to reflect the correct" OGS. *Id.* at 14.

Next, Appellant insists Attorney Feeney provided inadequate advice regarding his right to testify, which led Appellant to forfeit that right.[13] *See* Appellant's Brief at 15. He maintains that Attorney Feeney briefly counseled him on his right to testify mid-trial during a jury break, and "told Appellant that the jury would hear about his past criminal record, and it would make him look guilty." *Id.* at 20-21. However, Appellant maintains that none of his prior convictions would have been disclosed to the jury because they did not involve *crimen falsi* offenses. *Id.* at 21. Moreover, Appellant insists that the benefit from his testimony "would have been significant" because he would have explained "why the drugs were in small baggies and why no paraphernalia was found on his person" and that he was giving Romig "some of his **own** drugs that he had for his own personal use[.]" *Id.* at 23. Thus, he argues Attorney Feeney's "erroneous advice made [his] waiver [of his right to testify] unintelligent." *Id.* at 26.

_____

[13] Because the decision whether to testify is "ultimately to be made by the defendant after full consultation with counsel[,]" in order to prove counsel's ineffectiveness with regard to this decision, an appellant "must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa. Super. 2019) (citation omitted). Generally, however, "where a defendant voluntarily waives his right to testify after a colloquy, he . . . cannot argue that trial counsel was ineffective in failing to call him to the stand." *Id.* (citation omitted).

Appellant's third ineffectiveness claim highlights Attorney Feeney's failure to file a pretrial suppression motion challenging the warrantless search of the vehicle in which Appellant was a passenger.[14] Appellant's Brief at 27. He argues that the Commonwealth did not establish the exigent circumstances necessary to justify a warrantless vehicle search. *Id.* at 30. Appellant states: "Had the jury not heard about the drugs and other items found in the vehicle it is significantly less likely that they would have found that Appellant was a dealer as opposed to a drug user." *Id.* at 36.

Appellant next asserts Attorney Feeney was ineffective for failing to object to the testimony of the Commonwealth's expert witness, Detective Pasquale Leporace. *See* Appellant's Brief at 37. His argument is two-fold. First, he contends the Commonwealth "ambushed" the defense at trial because it did not identify Detective Leporace as an expert or provide an expert report prior to trial. *See id.* at 37-38. Appellant insists counsel should have requested the Commonwealth file an expert report, and then called his own expert to rebut the detective's testimony that he drugs recovered from Appellant were not for his personal use. *See id.* at 38-39, 41-42. Second,

---

[14] While trial counsel's failure to file a suppression motion may constitute ineffective assistance, "if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move." *Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa. Super. 2016) (citation omitted). Moreover, "[t]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." *Id.* (citation omitted).

Appellant insists Attorney Feeney should have requested a curative instruction or sought a mistrial after Detective Leporace testified during cross-examination that he was "asked [by the Commonwealth] to **render a verdict** on what was seized" on August 11th. *Id.* at 43 (emphasis added), *citing* N.T., Jury Trial, at 336. Appellant emphasizes that an expert is not permitted to provide an opinion on the ultimate issue at trial, *i.e.*, the defendant's guilt of the charges. Appellant's Brief at 43-44.

In his penultimate claim, Appellant avers that Attorney Feeney was ineffective for "failing to file a pre-trial motion requesting the identity of the CI." Appellant's Brief at 46. He insists the CI was the "only 'uninterested' eyewitness to the transaction between Romig and Det[ective] Karns and was present to overhear their conversation related to 'her guy.'" *Id.* at 51. Appellant emphasizes that Romig had a "vested interest in testifying for the Commonwealth[,]" and that there was "[n]o other corroboration of Det[ective] Karn's testimony[.]" *Id.* at 52-53. He further contends that if the identity of the CI had been revealed, Attorney Feeney could have investigated the individual to ascertain their "1) . . . ties to the drug trade in Berks County; 2) . . . connection (if any) to the case; 3) what if any other cases this CI has testified in[;] and 4) whether [their] testimony was found credible in those cases." *Id.* at 56. (emphasis omitted). Moreover, even if the court had denied the disclosure motion, Attorney Feeney "would have at least been in a position to request a missing witness instruction." *Id.* at 57.

Lastly, Appellant presents a claim based on the cumulative effect of Attorney Feeney's errors. **See** Appellant's brief at 58. He argues that errors were "not harmless" and their cumulative effect "rendered the verdict inherently unreliable, violating [his] constitutional right to a fair trial and due process of law." **Id.** at 59-60.

Upon our review of the record, the parties' briefs and the relevant case law, we conclude the trial court thoroughly addressed and properly disposed of Appellant's first five claims in its Findings of Fact and Conclusions of Law attached to its August 30, 2022, order denying PCRA relief. **See** Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief, 8/30/22, at 6-28 (concluding (1) Appellant did not establish Attorney Feeney provided ineffective advice regarding the Commonwealth's plea offer because (a) despite Appellant's claim to the contrary, Attorney Feeney testified at the PCRA hearing that he recommended Appellant accept the plea and the offer he reviewed — which the Commonwealth introduced at the hearing — reflected the correct OGS, but that (b) Appellant rejected the offer because he "believed he had a good chance to win at trial[;]"[15] (2) Appellant cannot establish Attorney Feeney interfered with his right to testify when Appellant "knowingly, intelligently, and voluntarily waived his right"

---

[15] **See** Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 7; N.T. PCRA H'rg, 6/1/22, at 21.

after a complete colloquy;[16] (3) Appellant did not establish Attorney Feeney was ineffective for failing to file a motion to suppress the evidence recovered from the warrantless search of the vehicle because (a) at all relevant times in this case, "warrantless vehicle searches in Pennsylvania were governed by the Pennsylvania Supreme Court's decision" in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014),[17] which required only probable cause, and not the existence of exigent circumstances, (b) the Supreme Court's decision overturning *Gary* — *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) — was not issued until December 22, 2020, and (c) in any event, Appellant "was only charged with the drugs found on his person after he was arrested and removed from" the vehicle;[18] (4) Appellant did not establish Attorney Feeney was ineffective for failing to consult with or present an expert witness at trial to rebut Detective Leporace's testimony because he failed to identify (a) an expert who would have been willing and available to testify at his trial and (b) what beneficial testimony the expert would have provided since Appellant himself admitted "he was bringing drugs to . . . Romig's house because she was sick

---

[16] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 15.

[17] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 17.

[18] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 19.

and those drugs were on his person when he was arrested[;]"[19] (5) Appellant did not establish Attorney Feeney was ineffective for failing to seek a mistrial or cautionary instruction after Detective Leporace stated he was asked to "render a verdict on what was seized" because "it was clear from his testimony that he was asked to provide his 'opinion' regarding the drugs seized on August 11th" and Appellant failed to establish the detective's poor word choice deprived him of a fair trial;[20] and (6) Appellant did not establish Attorney Feeney's ineffectiveness for failing to file a motion to disclose the identity of the confidential informant because he could not demonstrate "a reasonable possibility that the informant could give evidence that would exonerate him[,]" but rather, only sought the CI's identity "to perform a further investigation into the reliability of the [CI] and to offer duplicative evidence of . . . Romig's theft of drugs from the Commonwealth[,]" a fact she admitted).[21]

_____

[19] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 20-21. **See Commonwealth v. Morrow**, 650 A.2d 907, 912 (Pa. Super. 1994) (violation of Section 780-113(a)(3) "does not require that a party make a profit, it simply prohibits 'delivery'" of controlled substances); 35 P.S. § 780-102(b) (defining "delivery" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance").

[20] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 21, 23-24.

[21] Findings of Fact & Conclusions of Law in Disposition of Appellant's Motion for Post-Conviction Relief at 27 (citation & emphasis omitted).

Accordingly, we rest on the PCRA court's well-reasoned bases disposing of Appellant's first five claims, with two additional comments.

First, with regard to his allegation that Attorney Feeney provided inadequate advice regarding his right to testify, Appellant maintains that "[t]he benefit to the defense from [his] taking the stand would have been significant." Appellant's Brief at 22-23. He insists he could have explained why the drugs recovered from him were in small baggies and why he had no paraphernalia. *Id.* at 23. More importantly, however, he insists he would have refuted Detective Leporace's expert opinion that the drugs were for sale by explaining that he intended to give "Romig some of his **own** drugs that he had for his own personal use because she was going through withdrawal and was sick." *Id.* What Appellant fails to recognize, however, is that his intent to **deliver** drugs to Romig — whether for a profit or not — was sufficient to sustain his convictions. *See Morrow*, 650 A.2d at 912; 35 P.S. § 780-102(b). Thus, Appellant cannot establish he was prejudiced by Attorney Feeney's advice not to testify.

Second, with regard to Appellant's assertion that Attorney Feeney should have objected to Detective Leporace's testimony because the defense was unaware of the expert before trial, we note that this claim was raised and rejected in Appellant's direct appeal. *See Tiburcio*, 1589 MDA 2016 (unpub. memo. at 4); *see also* Trial Ct. Op., 12/8/16, at 13-14. Therefore, for purposes of PCRA review, it has been previously litigated, and Appellant may not seek relief on that claim. *See* 42 Pa.C.S. §§ 9543(a)(3) (in order to be

eligible for PCRA relief, petitioner must demonstrate "the allegation of error has not be previously litigated or waived"); 9544(a)(2) ("an issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue").

With regard to Appellant's final claim, asserting the cumulative impact of Attorney Feeney's purported errors, we reiterate the Pennsylvania Supreme Court's oft-cited holding that "no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Williams*, 896 A.2d 523, 548 (Pa. 2006) (citations omitted). We note however, that cumulative prejudice may be assessed when the failure of individual claims is grounded in the lack of prejudice. *See Commonwealth v. Hanible*, 30 A.3d 426, 483 (Pa. 2011). Here, however, most of Appellant's claims fail for lack of arguable merit, or because Attorney Feeney had a reasonable basis for his actions. Accordingly, Appellant's final claim fails.

Because we conclude the PCRA court properly denied Appellant relief on his claims, we affirm the order on appeal. We further direct the parties to attach of copy of the PCRA court's August 30, 2022, Findings of Fact and Conclusions of Law to all future filings of this memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
  :   OF BERKS COUNTY, PENNSYLVANIA
  :   CRIMINAL DIVISION
  :
v.   :   No. CP-06-CR-4618-2015
  :
JUAN RAMON TIBURCIO   :   Assigned to:  M. Theresa Johnson, J.

Teri Himebaugh, Esquire
*Attorney for Petitioner*

Alisa Hobart, Esquire
*Attorney for the Commonwealth*

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN DISPOSITION OF THE DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF

## PROCEDURAL HISTORY

The defendant in the above-captioned case, Juan Ramon Tiburcio ("Tiburcio"), was charged with various drug-related offenses arising from an incident alleged to have occurred between June 29, 2015, and August 11, 2015.  On August 2, 2016, a jury found Tiburcio guilty on two counts of delivery of a controlled substance,[1] possession with intent to deliver a controlled substance,[2] conspiracy to commit possession with intent to deliver a controlled substance,[3] three counts of criminal use of communication facility,[4] three counts of possession of drug paraphernalia,[5] and three counts of possession of a controlled substance.[6]  On August 9, 2016, Tiburcio was sentenced to serve an aggregate term of eleven (11) years to sixty (60) years in a State Correctional Facility.  Tiburcio was given a credit of three hundred sixty-four (364) days for time served.

---

[1] 35 P.S. §780-113(a)(30).
[2] 35 P.S. §780-113(a)(30).
[3] 18 Pa.C.S.A. §903(a)(1) to commit 35 P.S. §780-113(a)(30).
[4] 18 Pa.C.S.A. §7512(a).
[5] 35 P.S. §780-113(a)(32).
[6] 35 P.S. §780-113(a)(16).





1

On September 26, 2016, Tiburcio filed a Notice of Appeal to the Superior Court of Pennsylvania. On August 22, 2017, the Superior Court affirmed Tiburcio's judgment of sentence but found that Tiburcio had waived his sentencing issue due to his failure to file a Pa.R.A.P. 2119(f) statement and the Commonwealth's objection to its absence.

On October 18, 2017, Tiburcio filed a petition requesting leave to file a *nunc pro tunc* petition for allowance of appeal to the Pennsylvania Supreme Court. Within that petition, Tiburcio claimed that his appointed counsel, Kevin Feeney, Esquire ("Attorney Feeney"), had abandoned him as he failed to file a petition for allowance of appeal with the Supreme Court despite Tiburcio's request for the same. Tiburcio attached a letter dated August 30, 2017, that was sent to Attorney Feeney instructing him to file a petition with the Supreme Court.

Upon review of Tiburcio's petition and the applicable Pennsylvania law, this Court treated the petition as filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §9541 *et seq.*[7] This Court appointed PCRA counsel for Tiburcio and counsel filed an amended petition on his behalf. On February 28, 2019, upon agreement of counsel, this Court entered an order which 1) reinstated Tiburcio's right to appeal and challenge the discretionary aspects of his sentence and 2) reinstated Tiburcio's right to file a petition for allowance of appeal with the Supreme Court on all issues initially raised in the Superior Court and any that may arise following Tiburcio's challenge to the discretionary aspects of his sentence.

On March 25, 2019, Tiburcio exercised his reinstated appellate rights and filed a Notice of Appeal to the Pennsylvania Superior Court from this Court's order of August 9, 2016. On March

---

[7] "[Pennsylvania Courts] have repeatedly held that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition." *Commonwealth v. Jackson*, 30 A.3d 516, 521 (Pa. Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citation and ellipsis omitted). "It is well settled that any collateral petition raising issues with respect to remedies offered under the PCRA will be considered a PCRA petition." *Commonwealth v. Deaner*, 779 A.2d 578, 580 (Pa. Super. 2001) (citations omitted). The Pennsylvania Supreme Court has held "that counsel is *per se* ineffective for failing to file a requested petition for allowance of appeal." *Commonwealth v. Rigg*, 84 A.3d 1080, 1087 (Pa. 2014) (citations omitted).

10, 2020, the Superior Court affirmed Tiburcio's judgment of sentence. On April 7, 2020, Tiburcio filed a Petition for Allowance of Appeal. The petition was denied by the Pennsylvania Supreme Court on November 3, 2020.

On January 26, 2022, Tiburcio, by and through counsel, filed a Motion for Post-Conviction Relief ("Motion"), pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §9541 *et seq.* A hearing was held on May 23, 2022, to address Tiburcio's PCRA claims. At that time, Tiburcio and Tiburcio's trial counsel, Attorney Feeney, presented testimony. On July 8, 2022, Tiburcio, by and through counsel, filed an argument brief setting forth his position regarding each issue. On August 4, 2022, the Commonwealth filed a memorandum requesting the denial of the Motion.

## PCRA JURISDICTION AND TIMELINESS

The disposition of the Motion is governed by the PCRA and the corresponding decisional law that has developed from the PCRA and its predecessor, the Post-Conviction Hearing Act. The PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. §9542. In order to qualify for relief pursuant to the PCRA, a petitioner must plead and prove by a preponderance of the evidence that he or she has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

(i) currently serving a sentence of imprisonment, probation or parole for the crime;

(ii) awaiting execution of a sentence of death for the crime; or

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence. 42 Pa.C.S.A. §9543(a)(1).

The petitioner must also prove by a preponderance of the evidence the existence of a defect in his or her conviction or sentence as set forth in 42 Pa.C.S.A. §9543(a)(2) and that the allegation of error has not been previously litigated or waived. 42 Pa.C.S.A. §9543(a)(2)(3).

A petitioner seeking PCRA relief must satisfy the PCRA's time requirements in filing his or her petition. A PCRA petition must be filed within one (1) year of the date the judgment becomes final unless the petitioner can prove the existence of one of the listed exceptions to this requirement set forth in 42 Pa.C.S.A. §9545(b)(1)(i)-(iii). 42 Pa.C.S.A. §9545(b)(1). The exceptions to the PCRA one-year statute of limitations are as follows: 1) the claim was not raised by the petitioner due to interference by government officials, 2) petitioner did not know the facts upon which his claim rests and had no ability to learn of them, or 3) a constitutional right has been recognized by the United States Supreme Court or the Supreme Court of Pennsylvania and it has been applied retroactively. *Id.* In the event an exception applies, a petitioner must file his or her petition within one year from the date the claim could have been presented. 42 Pa.C.S.A. §9545(b)(2).

> [I]f a PCRA petition is not filed within one year of the date that the judgment of sentence becomes final; or is not eligible for one of the three limited statutory exceptions to the timeliness requirement; or is entitled to one of the exceptions, but the exception is not asserted within [one year from] the date that the claim could have been brought; then the court has no jurisdiction to address the substantive merits of the petition. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001) (citation omitted); 42 Pa.C.S.A. §9545(b)(2).

In the case at bar, Tiburcio's Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on November 3, 2020. Tiburcio's sentence became final on

4

February 1, 2021, when the time for filing a petition for a writ of *certiorari* in the United States Supreme Court expired. *See* U.S. Sup.Ct. Rule 13(1) ("a petition for a writ of *certiorari* to review a judgment in any case…is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Tiburcio had one year from the date his judgment of sentence became final, February 1, 2022, to file a PCRA petition. Tiburcio's Motion was timely as it was filed on January 26, 2022.

## FACTUAL SUMMARY OF TIBURCIO'S OFFENSE

The facts of the case, as summarized by the Superior Court on March 10, 2020, are as follows:

Between June 29, 2015, and August 11, 2015, the Narcotics Enforcement Team of the Berks County District Attorney's Office ("Narcotics Team") was working undercover to purchase heroin from a suspect, Karla Romig. On August 11, 2016, Romig was arrested for drug offenses. She then consented to Sergeant Todd Harris' use of her phone to contact her supplier, later identified as Tiburcio. Posing as Romig, Sergeant Harris texted Tiburcio. During the text conversation, Sergeant Harris asked Tiburcio for "three whole ones" which meant he was asking for three bundles of heroin. Through the text conversation between Sergeant Harris (posing as Romig) and Tiburcio, they arranged to have Tiburcio deliver the drugs to Romig's residence. Once Tiburcio arrived at the residence, he sent a text message to Romig stating that he was outside.

At that same time, the surveillance units working with Sergeant Harris informed him that a Toyota Camry had pulled up at the residence. Tiburcio exited the passenger side of the Camry, operated by his brother Michael Tiburcio ("co-defendant"), and started to walk

5

up onto the porch of Romig's residence. He was then taken into custody. The Narcotics Team recovered from Tiburcio's person $818.00 in U.S. currency, two cellular telephones, and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets.

The Narcotics Team instructed the co-defendant to exit the Camry. A subsequent search of the co-defendant led to the recovery of a plastic sandwich bag containing 41 packets of crack cocaine, $296.00 in U.S. currency, a chunk of bulk cocaine and one packet of powder cocaine. Following the administration of *Miranda* warnings, the co-defendant directed the Narcotics Team to a small change drawer to the left of the steering wheel in the Camry containing 15 additional packets of heroin. The Narcotics Team also recovered the co-defendant's cellular phone from inside of the Camry. The co-defendant admitted to Detective George Taveras of the Berks County District Attorney's Office that he was "willing to cooperate with law enforcement," "he was doing this to get by," "times were tough," and that "this was a very small amount" and he can do "bigger things."

*Commonwealth v. Tiburcio*, 505 MDA 2019 at *1 (Pa. Super. filed March 10, 2020) (unpublished memorandum) (alterations omitted).

## FINDINGS OF FACT

1. On the date of the hearing on the Motion, May 23, 2022, Attorney Feeney had worked as a criminal defense attorney for approximately 33 years and handled several hundred drug-related cases. Notes of Testimony, PCRA Hearing, May 23, 2022 ("N.T."), at 5, 18. He practices exclusively in criminal defense. *Id.* at 18.

6

2. Prior to Tiburcio's trial, the Commonwealth made a negotiated plea offer to Tiburcio to resolve his criminal matter. *Id.* at 5. Attorney Feeney testified that the offer was for a sentence of 2 to 6 years. *Id.* The plea sheet corroborated Attorney Feeney's testimony. *Id.* at 20, 44. Attorney Feeney believed this to be a good offer that was in the standard range with the sentences on multiple counts running concurrently. *Id.* at 5. Attorney Feeney recommended that Tiburcio accept the offer. *Id.* at 6, 20.

3. The negotiated plea offer was made in writing. *Id.* at 6. Attorney Feeney talked with Tiburcio about the offer several times over the phone and in person before his trial. *Id.* at 6, 7, 31. During those discussions, they didn't discuss the specific amount of drugs charged in each count. *Id.* at 7. They did discuss the offense gravity score that was on the Commonwealth's written negotiated plea offer but Attorney Feeney did not recall the actual score. *Id.* at 8. However, he believed the offense gravity score was correct when he reviewed the plea sheet, marked as Commonwealth's Exhibit 1, at Tiburcio's PCRA hearing. *Id.* at 20.

4. Attorney Feeney did not recall Tiburcio expressing any concern regarding the offense gravity score listed on the Commonwealth's written negotiated plea offer. *Id.* at 8.

5. Tiburcio rejected the negotiated plea offer. *Id.* at 20, 22. He believed that he had a good chance to win at trial as the Commonwealth's main witness, Karla Romig, was a habitual drug user and drug dealer. *Id.* at 21. She also stole drugs from the Commonwealth, had crimen falsi convictions and was "pretty strung out" when she was arrested in this case. *Id.* Attorney Feeney raised these issues during his cross-examination of Karla Romig during trial. *Id.*

7

6. Attorney Feeney believed that the Commonwealth had a strong case against Tiburcio other than the credibility issues concerning Karla Romig. *Id.* at 23.

7. Attorney Feeney did not specifically recall whether he advised Tiburcio to take the witness stand during his trial. *Id.* at 9, 22-23. He usually tells his clients that it is their choice but generally leans against his clients testifying. *Id.* at 23. In this case, Attorney Feeney was concerned that Tiburcio would have to answer questions about certain telephone conversations and the drugs found on him. *Id.*

8. Attorney Feeney didn't remember if Tiburcio provided a statement to the police. *Id.* at 9.

9. Attorney Feeney reviewed Tiburcio's presentence investigation and knew that he did not have any convictions related to *crimen falsi* crimes. *Id.* at 10.

10. Prior to trial, Attorney Feeney was not aware that Tiburcio was in inpatient drug and alcohol treatment as a juvenile. *Id.* He did remember that Tiburcio told him that he had a drug addiction but didn't remember when he learned of this information. *Id.* at 11, 12.

11. Tiburcio informed Attorney Feeney that the drugs found on him were for personal use. *Id.* at 12. This information was provided prior to trial. *Id.*

12. A pretrial motion was not filed by Attorney Feeney. *Id.* at 13, 23. Attorney Feeney testified that Tiburcio's arrest occurred during the "pre-*Alexander* period of time." *Id.* at 23-24. Attorney Feeney testified that he could not think of any exigent circumstances present that would have justified a warrantless vehicle search. *Id.* at 13. He also stated that Tiburcio was only charged with the drugs found on his person after he was arrested and removed from the vehicle. *Id.* at 24. He did not remember if he objected to the admission of the evidence obtained from the vehicle at trial. *Id.* at 13.

8

13. Attorney Feeney was informed by the Commonwealth that an expert witness would be testifying during Tiburcio's trial. *Id.* He learned of this information shortly before trial or during trial. *Id.* There was nothing in the discovery regarding an expert opinion. *Id.* at 14.

14. Attorney Feeney objected to the testimony of the Commonwealth's expert but did not recall the basis for his objection. *Id.* at 14, 24. This issue was raised by Attorney Feeney on direct appeal. *Id.* at 24-25.

15. After learning of the Commonwealth's expert, Attorney Feeney did not make an attempt to obtain his own expert. *Id.* at 14. He didn't believe it would have helped his case because Karla Romig requested that Tiburcio deliver drugs to her and then he was arrested when he went to her house with the requested drugs. *Id.* at 27-29.

16. Attorney Feeney has previously hired experts in drug cases. *Id.* at 28. In those situations, there was a question about whether the drugs were possessed for delivery or personal use. *Id.*

17. Attorney Feeney did not recall whether the Commonwealth's expert testified that a person's tolerance to drugs increases as they use more drugs or the amount of drugs used by Tiburcio based on his tolerance level. *Id.* at 14-15. He also did not recall that the expert testified that he was asked by the Commonwealth to "render a verdict on what was seized." *Id.* at 15.

18. Attorney Feeney testified that he was unfamiliar with a jury instruction referred to as a "low grade charge." *Id.* at 15, 25.

19. Attorney Feeney testified that, prior to trial, he was aware that Karla Romig was selling drugs to the police and an unknown informant and that this informant was present at a

meeting with Karla Romig and a detective on June 29, 2015. *Id.* at 16. Attorney Feeney did not file a pretrial motion requesting the identity of the confidential informant. *Id.* He testified that he did not believe that the identity of the confidential informant was relevant as Tiburcio was charged with the drugs in his possession when he went to Karla Romig's house. *Id.* at 26. Karla Romig was stealing drugs from the Commonwealth during controlled buys and Attorney Feeney didn't feel that the identity of the confidential informant would have helped him more than Karla Romig. *Id.* at 26-27. Also, a detective was always present with the confidential informant when the drug deals took place with Karla Romig. *Id.* at 27.

## CONCLUSIONS OF LAW

### Ineffective Assistance of Counsel – Generally

In order for a PCRA petitioner to succeed on an ineffective assistance of counsel claim, the PCRA petitioner must demonstrate that: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (citation omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010) (citation omitted). "In order for [a petitioner] to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super. 2006) (citation omitted).

10

"A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (citation and quotation marks omitted).

With regard to the second, reasonable basis prong, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective.

*Chmiel, supra* at 1127-1128 (citations and quotation marks omitted).

"Appellant bears the burden of proving his counsel's ineffectiveness, for counsel's stewardship is presumed to be effective." *Commonwealth v. Thomas*, 539 A.2d 829, 837 (Pa. Super. 1988) (citation omitted). "[T]rial counsel cannot be found ineffective for electing not to raise [a] meritless claim." *Commonwealth v. Tilley*, 595 A.2d 575, 588 (Pa. 1991) (citations omitted).

### Tiburcio's Rejection of the Commonwealth's Plea Offer

Tiburcio first claims that his rejection of the Commonwealth's plea offer was based on inaccurate facts and information. He alleges that Attorney Feeney was ineffective when he gave

11

Tiburcio advice based on a plea sheet containing the incorrect offense gravity score. Furthermore, he avers that Attorney Feeney failed to take any steps to determine whether the offense gravity score was correct.

> [A] post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:
>
>> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.
>
> *Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (citation omitted).

In this case, Tiburcio claims that the plea offer he was given was based on the wrong offense gravity score and that he alerted Attorney Feeney to this issue. N.T. at 32, 37. He believed that, based on the amount of drugs he was charged with, the offense gravity score should have been different. *Id.* At the PCRA hearing, Tiburcio testified that he used the weight of the drugs to determine his offense gravity score based on an offense gravity score guideline sheet in his possession. *Id.* at 37. However, when Tiburcio was asked what he believed the offense gravity score should have been, he stated that he couldn't recall what the guideline sheet showed him. *Id.* at 37-38. Furthermore, the Commonwealth introduced the written negotiated plea offer during Tiburcio's PCRA hearing which indicated that the offense gravity score utilized by the Commonwealth was a 6. *Id.* at 44. This Court notes that in Tiburcio's second appeal to

12

the Superior Court, he claimed that this Court used an incorrect offense gravity score during sentencing. *Tiburcio, supra*, at *4. The Superior Court reviewed the record and determined that an offense gravity score of 6 was correct. *Id.* Therefore, there is no evidence that an incorrect offense gravity score was used by Attorney Feeney when discussing the Commonwealth's negotiated plea offer with Tiburcio and advising him to take it. There was no ineffective advice provided to Tiburcio. Tiburcio's claim lacks arguable merit.

### Tiburcio's Failure to Testify at Trial

Tiburcio next claims that Attorney Feeney was ineffective when he advised him not to testify at trial.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa. Super. 2013) (citation omitted). Additionally, "where a defendant voluntarily waives his right to testify after a colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1075 (Pa. Super. 2019) (citation omitted).

In this case, Tiburcio engaged in the following dialogue with this Court regarding his right to testify:

> THE COURT: Mr. Feeney, what is your intention as far as going forward with the case?

13

ATTORNEY FEENEY: Your Honor, my understanding is that Juan Tiburcio is not going to testify. Is that right?

TIBURCIO: Yes.

THE COURT: All right. Then let's have Mr. Juan Tiburcio come forward.

ATTORNEY FEENEY: May I have a minute, Your Honor? (whereupon, brief pause.).

JUAN TIBURCIO, Sworn.

THE CLERK: Please state your name for the record.

TIBURCIO: Juan Ramon Tiburcio.

ATTORNEY FEENEY: A little louder so she (indicating) can hear.

THE COURT: All right. Sir, do you understand that you have an absolute right to testify in this case?

TIBURCIO: Yes.

THE COURT: Do you understand that if you do testify, you will be cross-examined by the Assistant District Attorney?

TIBURCIO: Yes.

THE COURT: Do you understand that you have the absolute right to not testify in this case?

TIBURCIO Yes.

THE COURT: Do you understand that if you choose not to testify, I will instruct the jury that they must not draw any inference of guilt from that decision?

TIBURCIO: Yes.

14

| | |
|---|---|
| THE COURT: | Have you discussed this matter with your attorney, Mr. Feeney? |
| TIBURCIO: | Yes. |
| THE COURT: | Have you had enough time to talk to Mr. Feeney? |
| TIBURCIO: | Yes. |
| THE COURT: | And what is your decision? |
| TIBURCIO: | Not to testify. |
| THE COURT: | All right. The Court, then, finds that the defendant has made a knowing, voluntary and intelligent decision not to testify in his case. |

Notes of Testimony, Jury Trial, August 1, 2016, through August 2, 2016, at 360-362.

This Court finds that Tiburcio knowingly, intelligently and voluntarily waived his right to testify at trial. There is no evidence that trial counsel interfered with his right to testify. Tiburcio voluntarily waived his right to testify following this Court's colloquy and, therefore, he cannot now argue that Attorney Feeney was ineffective in failing to call him to the stand. Tiburcio's claim lacks arguable merit.

**Attorney Feeney's Failure to File a Pre-trial Motion and Object to an Illegal Vehicle Search During Trial**

Tiburcio next argues that Attorney Feeney was ineffective when he failed to file a Pre-trial Motion to Suppress the evidence obtained during the Commonwealth's vehicle search and/or object to the same at trial.

For many years, Pennsylvania courts applied a "limited automobile exception," which required the Commonwealth to establish probable cause and exigent circumstances to justify a warrantless search of a motor vehicle. On April 29, 2014, the Pennsylvania Supreme Court

decided *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), and held that the federal automobile exception to the warrant requirement applied to warrantless searches of motor vehicles in Pennsylvania. *Gary, supra* at 138. The *Gary* standard is set forth as follows:

> The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.

*Gary, supra* at 138.

The Pennsylvania Supreme Court's adoption of the federal automobile exception in *Gary* eliminated the need for a reviewing court to determine whether exigent circumstances justified a warrantless search of an automobile. However, on December 22, 2020, the Pennsylvania Supreme Court decided *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), and held that "warrantless vehicle searches require both probable cause and exigent circumstances." *Alexander, supra* at 207. The Court recognized that, as a result of its decision,

> we return to the pre-*Gary* application of our limited automobile exception under Article I, Section 8 of our Constitution, pursuant to which warrantless vehicle searches require both probable cause and exigent circumstances; one without the other is insufficient. This dual requirement of probable cause and exigency is an established part of our state constitutional jurisprudence.

*Id.* (quotation marks and internal citation omitted). Therefore, in addition to determining whether a warrantless search of a motor vehicle was supported by probable cause, "a reviewing

16

court will be required to determine whether exigent circumstances existed to justify the officer's judgment that obtaining a warrant was **not** reasonably practicable." *Id.* at 208 (emphasis in original). Although the "potential for danger to police or the public is enough to constitute exigent circumstances[,]...a mere assertion of danger is [not] sufficient. Rather, police must be able to articulate the danger posed under the specific circumstances of the case." *Id.* at 186 (citation omitted).

When making a determination regarding the existence of probable cause, a court must consider "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Ibrahim*, 127 A.3d 819, 824 (Pa. Super. 2015) (quotation mark and citation omitted). "In addressing the existence of probable cause, courts must focus on the circumstances as seen through the eyes of the trained police officer, taking into consideration that probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act." *Commonwealth v. Thompson*, 93 A.3d 478, 486 (Pa. Super. 2014) (citation omitted).

In this case, Tiburcio's trial commenced on August 1, 2016, during the time period when warrantless vehicle searches in Pennsylvania were governed by the Pennsylvania Supreme Court's decision in *Gary, supra.* In accordance with *Gary, supra*, the prerequisite for the warrantless search of the motor vehicle operated by Tiburcio's brother was probable cause to search. No exigency beyond the inherent mobility of a motor vehicle was required.

The testimony presented during trial established that Sergeant Todd Harris posed as Karla Romig and arranged for Tiburcio to deliver drugs to Karla Romig's residence. Tiburcio was

17

transported to Karla Romig's residence by his brother and, upon arrival, sent a text message to Karla Romig informing her that he was outside. At the same time, surveillance units observed a Toyota Camry pull up at Karla Romig's residence. Tiburcio exited the vehicle and started to walk up onto Karla Romig's porch when he was taken into custody. He was in possession of $818.00 in U.S. currency, two cellular telephones, and a sandwich bag containing a bundle of 10 heroin packets and another bundle of 9 heroin packets. Tiburcio's brother was also taken into custody and a subsequent search of his person led to the discovery of a plastic sandwich bag containing 41 packets of crack cocaine, $296.00 in U.S. currency, a chunk of bulk cocaine and one packet of powder cocaine. He was read his *Miranda* warnings and directed law enforcement to the location of 15 additional packets of heroin located inside of the vehicle. Under the law in effect at the time of Tiburcio's trial, law enforcement had probable cause to go into the Toyota Camry without a warrant and retrieve the 15 packets of heroin. A cellular phone belonging to Tiburcio's brother was also discovered inside of the vehicle. Therefore, a motion to suppress the evidence obtained from the Toyota Camry and/or a trial objection to the same would have been meritless as law enforcement had probable cause to search the vehicle in compliance with *Gary*, *supra*. *See Tilley*, *supra* ("[T]rial counsel cannot be found ineffective for electing not to raise [a] meritless claim.").

This Court notes that, during the PCRA hearing, Attorney Feeney was asked by Tiburcio's counsel whether there were any exigent circumstances present that would have justified a warrantless search of Toyota Camry. N.T. at 13. In response, Attorney Feeney stated that he could not think of any. *Id.* However, this was of no consequence. As referenced above, Tiburcio's trial took place on August 1, 2016. At that time, warrantless vehicle searches were governed by the Pennsylvania Supreme Court's decision in *Gary*, *supra*. "Because this claim

18

sounds in ineffective assistance of counsel, [Tiburcio] must demonstrate that counsel was incompetent under the law in existence *at the time of trial*. Counsel cannot be deemed ineffective for failing to predict developments or changes in the law." *Commonwealth v. Gribble*, 863 A.2d 455, 464 (Pa. 2004) (emphasis added). It wasn't until December 22, 2020, that the Pennsylvania Supreme Court held that "warrantless vehicle searches require both probable cause and exigent circumstances" in *Alexander, supra*.

Assuming, *arguendo*, that Attorney Feeney had filed a motion to suppress the drugs found in the Toyota Camry, Attorney Feeney testified that Tiburcio was only charged with the drugs found on his person after he was arrested and removed from the Toyota Camry. Therefore, even if the drugs in the vehicle were suppressed, Tiburcio would not be entitled to relief as he was not charged with possessing those items. Tiburcio's claim lacks arguable merit.

### Detective Leporace's Testimony

Tiburcio next claims that Attorney Feeney was ineffective for multiple reasons all concerning the testimony of Detective Leporace. Specifically, Tiburcio argues that 1) Attorney Feeney failed to request a continuance of the trial and consult with and/or call an expert to testify; 2) Attorney Feeney failed to object and/or move for a mistrial and/or seek a curative instruction when Detective Leporace testified that he was asked by the Commonwealth to render a verdict on what was seized from the defendants and that he complied with that request; and 3) Attorney Feeney failed to request a "low grade" jury instruction in relation to Detective Leporace's testimony.

First, this Court will address Tiburcio's claim that Attorney Feeney was ineffective due to his failure to consult with and/or call an expert at trial.

19

In order to demonstrate counsel's ineffectiveness for failure to call a witness, a petitioner must prove that the witness existed, the witness was ready and willing to testify, and the absence of the witness' testimony prejudiced petitioner and denied him a fair trial. In particular, when challenging trial counsel's failure to produce expert testimony, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. Also, trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Finally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony which was presented by the prosecution.

*Commonwealth v. Luster*, 71 A.3d 1029, 1047 (Pa. Super. 2013) (citations, alternations and quotation marks omitted).

Here, Tiburcio has failed to establish Attorney Feeney's ineffectiveness for his failure to consult with and/or call an expert to testify. As set forth above, Tiburcio was required to articulate what evidence was available and identify the expert witness who was willing to offer such evidence at trial. At the PCRA hearing, there was no testimony presented identifying any expert witness that was available to testify on Tiburcio's behalf at trial and/or the evidence he or she would have presented. Furthermore, Attorney Feeney was not required to introduce expert testimony on behalf of Tiburcio since he was able to effectively cross-examine Detective Leporace and elicit helpful testimony at Tiburcio's trial. Notes of Testimony, Jury Trial, August 1, 2016, through August 2, 2016, at 330-339. Attorney Feeney also testified that he didn't believe an expert would have helped Tiburcio's case since this was not a situation where there was a question about whether the drugs possessed by Tiburcio were for delivery or personal use.

The facts of the case established that Karla Romig requested that Tiburcio bring her drugs and he was arrested in the course of delivering them to her. In fact, during the PCRA hearing, Tiburcio admitted that he was bringing drugs to Karla Romig's house because she was sick and those drugs were on his person when he was arrested. N.T. at 39. Attorney Feeney thus had a reasonable basis for not consulting with and/or calling an expert to dispute Detective Leporace's testimony. Therefore, for all of these reasons, this Court finds that Tiburcio's claim lacks arguable merit.

Next, this Court will address Tiburcio's assertion that Attorney Feeney was ineffective when he failed to object and/or move for a mistrial and/or seek a curative instruction when Detective Leporace testified that he was asked by the Commonwealth to render a verdict on what was seized from the defendants and that he complied with that request. Specifically, Tiburcio takes issue with the following exchange:

Attorney Feeney: And in preparation a couple of months ago or even last week, it never occurred to you to look to see what the criminal charges filed against Juan Tiburcio was?

Detective Leporace: No. I was asked to render a verdict on what was seized on August 11th. And that's exactly what I did.

Notes of Testimony, Jury Trial, August 1, 2016, through August 2, 2016, at 336.

In this case, Detective Leporace testified as an expert in drug trafficking and drug packaging. Rule 702 of the Pennsylvania Rules of Evidence specifically addresses expert witnesses and states, in relevant part, as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

21

(a) the expert's scientific, technical, or other specialized knowledge is beyond that

possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the

trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. "It is well-settled that the purpose of expert testimony is to assist in grasping

complex issues not within the ordinary knowledge, intelligence and experience of the jury."

*Commonwealth v. Mendez*, 74 A.3d 256, 262 (Pa. Super. 2013) (quotation marks, alteration and

citation omitted).

An opinion is not excludable merely because it embraces an ultimate issue. PA R.E. 704.

An expert opinion that embraces an ultimate issue may be objectionable on other

grounds, however, as the Pennsylvania Superior Court observed:

Pennsylvania law allows expert opinion testimony on the ultimate issue. As with

lay opinions, the trial judge has discretion to admit or exclude expert opinions on

the ultimate issue depending on the helpfulness of the testimony versus its

potential to cause confusion or prejudice.

*Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 882 (Pa. Super. 2019) (citation omitted).

Here, Tiburcio claims that Detective Leporace's statement that he was asked to "render a

verdict" and "that's exactly what I did" was objectionable and that Attorney Feeney was

ineffective when he failed to object, move for a mistrial and/or request a curative instruction.

Tiburcio states that it is the sole responsibility of the jury to render a verdict, not the expert.

Merriam-Webster's Online Dictionary ("Merriam-Webster") defines the term "verdict"

as "the finding or decision of a jury on the matter submitted to it in trial." Merriam-Webster's

22

Online Dictionary, definition of verdict, https://www.merriam-webster.com/dictionary/verdict (last visited August 30, 2022). Merriam-Webster also lists the synonyms for "verdict" as "award, call, conclusion, decision, deliverance, determination, diagnosis, judgment (or judgement), *opinion*, resolution." *Id.* (emphasis added). As set forth above, an expert is permitted to render an opinion and that opinion may address the ultimate issue being decided by a jury. Therefore, Detective Leporace's statement was he was "asked to render a verdict" and that is "exactly what I did" was synonymous with him saying that he was asked to render an opinion and did, in fact, provide one. There was nothing objectionable about this statement. Furthermore,

> Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a **new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.** Moreover, it must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial.

*Commonwealth v. Sullivan*, 820 A.2d 795, 800 (Pa. Super. 2003) (citation omitted) (emphasis in original). Even if Detective Leporace's word choice could have been different, it was clear from the testimony that he was asked to provide his opinion regarding the drugs seized on August 11th.

23

Tiburcio has failed to establish that he was deprived of a fair and impartial trial as a result of Detective Leporace's testimony. Tiburcio's claim lacks arguable merit.

Tiburcio next claims that Attorney Feeney was ineffective when he failed to request that a jury instruction called a "low grade charge" in relation to the Commonwealth's expert testimony.

"An instruction that expert opinion testimony is 'low-grade' evidence is proper when: 1) The expert's opinion is based on facts recited in a hypothetical question; or 2) The expert's opinion is contradicted by direct evidence." *Commonwealth v. Correa*, 620 A.2d 497, 502 (Pa. Super. 1993) (citation omitted). However, this instruction has limited use. In *Commonwealth v. Hernandez*, 615 A.2d 1337 (Pa. Super. 1992), the Superior Court rejected the application of the low-grade jury instruction stating:

> A fair characterization of the low grade witness instruction would be that it was designed specifically for dealing with the competency of lay witnesses and psychiatrists testifying on questions of sanity.
>
> A low grade witness instruction is not applicable here. This case is an involuntary deviate sexual intercourse case. No one had been asked to testify as to [the defendant's] sanity in a homicide. [The expert's] statement was not rebutted by other expert testimony, or by the physical evidence. There is no basis for giving a low grade witness instruction.

*Id.* at 1344.

In this case, Tiburcio claims that Attorney Feeney was ineffective due to his failure to request a low-grade charge instruction. As set forth above, "the low grade witness instruction…was designed specifically for dealing with the competency of lay witnesses and

24

psychiatrists testifying on questions of sanity." Here, Tiburcio's case involved drug possession and delivery. Tiburcio's sanity was not at issue. Detective Leporace's statement was not contradicted by other expert testimony or physical evidence. Therefore, a low-grade jury instruction was not applicable. Additionally, this Court notes that in *Commonwealth v. Genao*, 240 A.3d 189 (Pa. Super. 2020) (non-precedential decision), the Superior Court recognized the removal of the low-grade instruction from the standard jury instructions. *Genao, supra* at *6 (trial court properly denied request for low-grade instruction based on its limited applicability and its removal from the standard jury instructions). Tiburcio's claims lack arguable merit.

## Disclosure of the Confidential Informant

Tiburcio next claims that Attorney Feeney was ineffective due to his failure to file a pretrial motion seeking the disclosure of the confidential informant's identity.

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

In striking the proper balance, the court must consider the following principles:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's

25

identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

No fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Our case law provides that if a defendant shows that disclosure of an informant's identity would yield information material to his or her defense, and that the request for disclosure is reasonable, the trial court must then balance relevant factors to determine, in its discretion, whether the informant's identity should be revealed. However:

Before the informant's identity may be revealed, ... the accused must show the information is material to the defense and the request is reasonable. The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

To prove the information is material, the defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source.

*Commonwealth v. Ellison*, 213 A.3d 312, 316-317 (Pa. Super. 2019) (citations, quotation marks and alterations omitted).

In this case, Tiburcio claims that Attorney Feeney was ineffective due to his failure to file a pretrial motion to reveal the identity of the confidential informant. He believes that learning the identity of the confidential informant would have permitted Attorney Feeney to investigate this individual and their ties to the Berks County drug trade, their connection to this case, their prior testimony in other cases and whether their testimony was credible. Petitioner's Post PCRA Hearing Argument at 12. He further alleges that the confidential informant could have been used to testify that Karla Romig stole drugs from the Commonwealth during controlled buys. *Id.* However, as set forth in *Ellison, supra,* Tiburcio "must demonstrate a reasonable possibility the informant could give evidence that *would exonerate him.*" *Ellison, supra* at 317 (emphasis added). Here, Tiburcio has made no such demonstration. Instead, Tiburcio wanted the name of the confidential informant simply to perform a further investigation into the reliability of the confidential informant and to offer duplicative evidence of Karla Romig's theft of drugs from the Commonwealth.[8] His assertion that learning the name of the confidential informant might have been helpful to his case is insufficient. Therefore, his claim lacks arguable merit.

Additionally, during the PCRA hearing, Attorney Feeney testified that he did not believe the identity of the confidential informant was relevant since Tiburcio was only charged with the

---

[8] Karla Romig freely admitted to stealing from the Commonwealth on both direct and cross-examination. Notes of Testimony, Jury Trial, August 1, 2016, through August 2, 2016, at 168, 171-172, 182.

drugs in his possession when he went to Karla Romig's house. He believed that the testimony of Karla Romig would have been more helpful to Tiburcio's case than anything offered by the confidential informant. Attorney Feeney also stated that a detective was always present when the drug transactions took place with Karla Romig. In fact, the testimony presented at trial established that law enforcement conducted surveillance and took pictures of Tiburcio during the controlled buys. This Court finds that Attorney Feeney clearly had a reasonable basis for not filing a pretrial motion to seek the identity of the confidential informant. Therefore, for all of the above reasons, Tiburcio is not entitled to relief as his claim lacks arguable merit.

## CONCLUSION

This Court finds that Tiburcio has failed to prove that Attorney Feeney was ineffective. For the foregoing reasons, Tiburcio's Motion must be **DENIED**.